FILED
SUPERIOR COURT
OF GUAM

2014 NOV 12 PM 3:55

CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>v.<br><br>VINCENT PETER CAMACHO,<br><br>Defendant. | CRIMINAL CASE NO. CF0022-09<br><br>DECISION AND ORDER |

### INTRODUCTION

This matter came before the Honorable Vernon P. Perez on October 2, 2014, on the Government's Motion for Reconsideration. Assistant Attorney General Elizabeth S. Vasilades represented the Government. Attorney Stephen P. Hattori represented Defendant Vincent Peter Camacho ("Defendant"), who was present. Having reviewed the pleadings, the arguments therein, and the record, the Court now issues the following Decision and Order.

### BACKGROUND

Jury selection and trial in this matter commenced on April 22, 2014. On May 2, 2014, the jury returned a verdict finding Defendant guilty of the following charges: (1) First Degree Criminal Sexual Conduct; (2) Second Degree Criminal Sexual Conduct; (3) Child Abuse; (4) First Degree Criminal Sexual Conduct; (5) Second Degree Criminal Sexual Conduct; (6) Terrorizing; (7) Child Abuse; (8) Second Degree Criminal Sexual Conduct - Count One; (9) Second Degree Criminal Sexual Conduct – Count Two. (Verdict Forms 1-9, May 2, 2012).

On May 7, 2014, the Court received Defendant's Motion for Judgment of Acquittal, or in the Alternative, for New Trial. The Government filed its opposition on May 16, 2014. The

*People v. Camacho*
Case No. CF0022-09
Decision and Order

Court did not hear Defendant's Motion until August 7, 2014. On August 22, 2014, the Court issued a Decision and Order granting Defendant's Motion for Judgment of Acquittal as to the First Charge of First Degree Criminal Sexual Conduct ("CSC") only. The Court denied Defendant's Motion for Judgment of Acquittal as to the remaining charges.

On September 4, 2014, the Government filed a Motion to Reconsider Judgment of Acquittal. Defendant did not file any written opposition but argued at the October 2, 2014 Motion hearing that one was not necessary since the Government did not meet the threshold burden for reconsideration. (Digital Recording at 9:30:40, Oct. 2, 2014). That same day, the Court took the matter under advisement.

## DISCUSSION

At issue is whether the Court should reconsider its previous decision granting Defendant's Motion for Judgment of Acquittal as to the First Charge of First Degree CSC. When dealing with a Motion for Reconsideration in a criminal case, the Guam Supreme Court has held that "[u]nder the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *People v. Hualde*, 1999 Guam 3 ¶ 13. (internal citations omitted). However, the Court, in its discretion, may depart from the law of the case where: "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Id.*

In this case, the Government moves the Court to revisit the issue acquitting Defendant for the First charge of First Degree CSC. (Mot. Recons. at 2, Sep. 4, 2014). The Government submits that there was enough circumstantial evidence for the jury to conclude that penetration occurred to K.Q.Q. and that the Court did not consider the entire trial record before acquitting the Defendant. *Id.* Additionally, the Government contends that reconsideration is warranted because a manifest injustice will otherwise result because the Court had previously found enough evidence for a jury to convict beyond a reasonable doubt. *Id.* The Government argues that it is entirely possible, and it in fact happened, that the jury in determining that K.Q.Q. was

penetrated could consider the following circumstantial evidence and find guilt beyond a reasonable doubt:

> -**April 25th 2014** testimony of K.R.Q. at 3:03:15 where K.R.Q testifies that Vincent Camacho did the same thing to her sister, K.Q.Q. and that she heard her sister crying and that the door was locked.
>
> -**April 25th 2014** testimony of K.R.Q. at 3:07:07 where K.R.Q. explains on cross-examination that the reason she told people during the investigation that she saw K.Q.Q. being penetrated was because her little sister told her what happened.
>
> -**April 25th 2014** testimony of Ann Rios of Healing Hearts Crisis Center who explains during her testimony that the reasons K.Q.Q. needed to be examined was because the information she received was that both girls had been digitally penetrated. That Ann Rios needed to examine for issues like exposure to chlamydia because both girls had been digitally penetrated (Testimony at 3:36).
>
> -**April 25th 2014** testimony of Leticia Piper of Healing Hearts Crisis Center related to the information from K.R.Q. about what happened to K.Q.Q. and its relevance that the same thing had been done to K.Q.Q. was used in determining that K.Q.Q. also needed follow up examination. (Leticia Piper Testimony at 11:46-12:10pm)
>
> -Admitted evidence of the Healing Hearts Crisis Center Report of K.Q.Q.

*Id.* at 4-5.

The Government further directs the Court to *People v. Mendiola*, 2014 Guam 17, relying on *People v. Enriquez*, 2014 Guam 14, restricting the trial court from determining the weight of evidence rather than the jury. *Id.* at 5. Specifically, the Government relies on the following holding in *Mendiola*:

> While evidence of sexual penetration must be present, there are no magic words that need to be stated at trial. *People v. Enriquez*, 2014 Guam 11 ¶ 19 (explaining that a totality of the evidence may be used to infer the element of penetration); *see also Commonwealth v. Rodriguez*, 918 N.E.2d 865, 869 (Mass. App. Ct. 2009); *Commonwealth v. Fowler*, 725 N.E.2d 199, 203 (Mass. 2000); *Commonwealth v. Martino*, 588 N.E.2d 651, 655 (Mass. 1992). As we have previously recognized, "[w]hen ruling on a motion for judgment of acquittal, the trial court is concerned with the existence or nonexistence of evidence not its weight, and this standard remains constant even when the People rely exclusively on circumstantial evidence." *People v. Song*, 2012 Guam 21 ¶ 29 (citations omitted); *see also Jett*, 510 S.E.2d at 748-49 ("[C]ircumstantial evidence may be more compelling and persuasive than direct evidence, and when convincing, it is entitled to as much

weight as direct evidence." (quoting *Bridgeman v. Commonwealth*, 351 S.E.2d 598, 600 (1986))); *Rodriguez*, 918 N.E.2d at 868.

*People v. Mendiola*, 2014 Guam 17 ¶ 21.

As previously mentioned, Defendant did not file any written opposition but argued that one was not necessary since the Government did not meet the threshold burden for reconsideration. (Digital Recording at 9:30:40, Oct. 2, 2014).

Contrary to the Government's assertion that the Court only considered the testimony of K.Q.Q., the Court considered the entire record in an attempt to locate any evidence of penetration whether it be through testimony or exhibits. The Court cited to K.Q.Q.'s testimony to underscore the lack of evidence—even circumstantial—that penetration occurred with respect to K.Q.Q.. The Court considered the above evidence cited by the Government and determined that such was not circumstantial evidence that penetration occurred. Although at first glance the *Mendiola* case might seem on point, the facts of that case are distinguishable from the facts here.

In *Mendiola*, the Guam Supreme Court affirmed a judgment of conviction as to a charge of First Degree CSC. In that case, the victim testified that the defendant lay on top of her while both were naked and put pressure on her vagina with his penis. *Mendiola*, 2014 Guam 17 ¶¶ 4-5. Additionally, Ann Rios, a nurse examiner at Healing Hearts testified that she examined external and internal parts of the victim's vagina because of the victim's health history—i.e., the information provided to Healing Hearts during the victim's interview, which indicated that there had been sexual penetration. *Id.* at ¶ 25. The Supreme Court ultimately found that

> Several other pieces of circumstantial evidence were presented to the jury which, as a whole, could have convinced a rational trier of fact beyond a reasonable doubt that Mendiola sexually penetrated [the victim]. Mendiola instructed [the victim] to take off her clothes, told her to lie on the bed, placed a pillow over her face, removed his pants, spread her legs, and climbed on top of [the victim] in between her legs. While Mendiola lay on top of [the victim], she felt skin on skin, and pressure on her vagina from Mendiola's penis. While at Healing Hearts, [the victim] indicated that she had discomfort in her private parts and felt pain on urination.

*Mendiola*, 2014 Guam 17 ¶ 26. From this, the Supreme Court held that the testimony of the victim in combination with the testimony of Ann Rios gave the trier of fact a complete description of the incident, including the moment when the victim was sexually penetrated by the defendant. *Id.* at ¶ 27.

The facts of this case, specifically with respect to K.Q.Q, are markedly different from the facts in *Mendiola*. K.R.Q. testified that Defendant did the "same" thing to her sister, K.Q.Q.. (Testimony of K.R.Q, Digital Recording at 3:03:04, Apr. 25, 2014). However, there was no evidence to indicate or explain what K.R.Q meant by "same thing." When considering that the pain K.R.Q experienced could amount to circumstantial evidence of penetration, K.R.Q's testimony that that Defendant did the same thing to K.Q.Q. cannot be considered circumstantial evidence of penetration, when there was no evidence to indicate what exactly was meant by the "same" thing K.Q.Q., and whether or not K.Q.Q also experienced pain as a result therefrom.

K.R.Q's testimony explaining that the reason she told people during the investigation that she saw K.Q.Q. being penetrated was because her little sister told her what happened is also not circumstantial evidence of penetration. Rather, it is simply evidence that K.Q.Q. told K.R.Q. that something happened. However, there was no further evidence demonstrating what K.Q.Q. told K.R.Q exactly. With that alone, the Court cannot conclude that simply telling another person "what happened" without actually eliciting what was explained constitutes circumstantial evidence that penetration occurred.

Furthermore, Ann Rios' testimony that the reasons K.Q.Q. needed to be examined was based on information that both girls had been digitally penetrated is not circumstantial evidence that penetration occurred to K.Q.Q. Merely conducting an examination based on information that someone had been digitally penetrated is not circumstantial evidence that penetration occurred. It is simply evidence of the reasons for why a certain examination was conducted. The case would be different, of course, if the information received indicated that both girls were digitally penetrated and/or both were experiencing pain as a result. But such was not the case with regard to K.Q.Q.. There is no health history to indicate penetration, and there is nothing to

indicate that K.Q.Q. was experiencing any pain, as was the case with K.R.Q.. Thus, the Court cannot conclude that merely conducting an examination based on information that both girls were digitally penetrated is circumstantial evidence that penetration actually occurred to K.Q.Q..

A similar analysis is applicable to the testimony of Leticia Piper. The information from K.R.Q about what happened to K.Q.Q. and its relevance that the "same" thing had been done to K.Q.Q. is not circumstantial evidence that penetration occurred with respect to K.Q.Q.. Again, merely saying the "same" happened to K.Q.Q. is not circumstantial evidence that penetration occurred with respect to K.Q.Q.. There was no evidence as to what the "same" thing was. At most, the information is direct evidence of the reason as to why the nurses might have proceeded to examine K.Q.Q. in a particular manner.

Also, the Healing Hearts report of K.Q.Q. is also not circumstantial evidence that penetration occurred with K.Q.Q.. The intake notes of Leticia Piper note that due to K.M.Q.'s disclosing that she witnessed K.Q.Q. being "touched" by her uncle, K.Q.Q. was referred to Healing Hearts Crisis Center for a non-acute forensic exam. (Report of Leticia Piper; Ex.17a). As previously discussed, such information is not circumstantial evidence that penetration occurred, but merely evidence of information that provided a basis for Healing Hearts to proceed with certain examinations.

Finally, here again the Court will emphasize K.Q.Q's testimony at trial. K.Q.Q testified that she knew the difference between a "good touch" and a "bad touch." (Testimony of K.Q.Q., Digital Recording at 4:02:04, Apr. 25, 2014). K.Q.Q. testified that Defendant did a "bad touch." *Id.* at 4:02:35. However, K.Q.Q further testified that the touching was outside of her clothes. *Id.* at 4:06:22.

In considering the above-cited references, the Court is not weighing the evidence in making its determination. The Court is simply making a determination as to the existence or non-existence of evidence—in this case, circumstantial evidence—of whether or not penetration occurred with respect to K.Q.Q. Having determined that there is no circumstantial evidence, when considered as a whole, which could have convinced the a rational tier fact beyond a

reasonable doubt that Defendant sexually penetrated K.Q.Q., the Court will not deviate from its previous decision acquitting Defendant of the First Charge of First Degree CSC. On those bases, the Court will deny the Government's Motion for Reconsideration.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES the Government's Motion for Reconsideration. Sentencing is scheduled for _DEC 0 4 2014 @ 10:70 am_

**IT IS SO ORDERED** this 12th day of November, 2014.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

//

//

//